## BOEDDCHER v. FRANK.

No. 2851.   Decided August 25, 1916.   (159 Pac. 634.)

1. MUNICIPAL CORPORATIONS—STREETS—ACTIONS FOR NEGLIGENT USE —JURY QUESTION. Defendant's negligence in running his automobile into plaintiff's vehicle *held* a jury question. (Page 365.)

2. DAMAGES — PERSONAL INJURIES — JURY QUESTION — PROXIMATE CAUSE. Where there was evidence that defendant's automobile hit plaintiff's buggy with some force rendering her unconscious, *held* that whether the collision proximately caused a miscarriage was a jury question. (Page 365.)

3. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY VERDICT. Any error in admitting testimony that defendant was protected by automobile accident insurance is harmless, where only a $1,500 verdict was returned for a miscarriage and injuries that may be permanent. (Page 367.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Matha Boeddcher against Arthur Frank.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Evans, Evans & Folland,* for appellant.

*Weber & Olson,* for respondent.

### STATEMENT OF FACTS.

Plaintiff brought this action to recover for personal injuries alleged to have been sustained by her because of the negligence of defendant in permitting an automobile he was driving to collide with an express wagon in which she, in company with a small boy, was riding along one of the streets in Salt Lake City.

The facts upon which plaintiff bases her claim for damages are alleged, in substance, as follows: That plaintiff was driving a horse and wagon south on the west side of Ninth

East Street, Salt Lake City; that a street car going in the same direction approached her, and at the same time the defendant was rapidly driving an automobile in the same direction and on the same side, the west side of the street; that he overtook the plaintiff about the time the street car was passing her, and that the plaintiff was injured while defendant was negligently attempting to pass the street car and vehicle. The negligence alleged is driving at a great rate of speed, to wit, twelve miles an hour, failure to have the automobile under control and to reduce its speed, and want of caution in trying to pass plaintiff's vehicle; that in attempting to pass between the street car and the vehicle, because running too fast, and in failing to pass on the left side of plaintiff's wagon, and to have the automobile under control, the defendant struck the rear end of plaintiff's vehicle with force sufficient to jerk her backwards toward the rear of the wagon, the shock causing a miscarriage and permanent injuries. The defendant filed an answer admitting that the plaintiff was driving south on Ninth East Street, and that a street car approached her vehicle from the north, that the defendant was also driving south, and that his automobile came in contact with plaintiff's wagon. The answer denied the other allegations of the complaint. The evidence shows that the street where the alleged accident occurred was paved, that there was a curb and gutter on either side of the pavement, and that a double street car track was maintained thereon. An ordinance of Salt Lake City, (Section 1242) was admitted in evidence which provides that:

"Every driver of a vehicle overtaking another vehicle should pass on the left side of the overtaken vehicle and not pull over to the right until entirely clear of the overtaken vehicle."

The case was tried to a jury, who returned a verdict of $1,500 in favor of plaintiff. From the judgment entered on the verdict defendant prosecutes this appeal.

McCARTY, J. (after stating the facts as above).

Eight errors are assigned, but only two contain sufficient merit to warrant consideration. The error we shall first consider is directed to the refusal of the court to direct a

verdict for defendant.  The evidence, without conflict,    **1, 2**
shows that at the time defendant passed the street car
just prior to the alleged accident plaintiff was from 100 to
125 feet in advance of the automobile and street car; that
after passing the car defendant turned the automobile to the
left and crossed the west rail of the street car track, and pro-
ceeded south along the track; that the motorman sounded the
gong, signaled, several times for defendant to get off the car
track; that at the time the first signal was given defendant
was from twenty to thirty feet in advance of the street car,
and from seventy to one hundred feet to the rear of plaintiff's
wagon.  The evidence also shows that at the time the gong was
sounded there were no cars or vehicles on the east side of the
street in the immediate vicinity of the street car, the automo-
bile, or express wagon; nothing to prevent defendant from
turning to the left and passing plaintiff's wagon and at the
same time avoiding every possibility of a collision with the
street car.  The evidence further shows that before the auto-
mobile came in contact with the wagon the street car had
overtaken the automobile, and at the time of the accident
was alongside of the wagon.  There is evidence tending to show
that at the time the automobile came in contact with the
wagon the right wheels of the wagon were in the gutter and
close to the curb, and that there was ample space between the
wagon and the street car track for the automobile to pass
without coming in contact with either the street car or the
wagon.  This evidence, however, is disputed by defendant, who
testified that the wagon was several feet east of the gutter and
curb; that it was "about halfway between the curb and track,"
and that there was not sufficient room for him to pass between
the street car and wagon.  Defendant testified in part as fol-
lows:

"It is 16½ feet from the car track to the curb.  That would
be 15½ feet between the car and curb.  My auto is between
five and six feet wide and the wagon five feet wide.  *  *  *
I saw Mrs. Boeddcher's wagon first when I went off the track;
that is, when I heard the whistle.  *  *  *  I turned to the
left on the car track, and then as I heard the whistle I turned
to the right.  *  *  *  I thought the car was close to me,

and went off the track and started to put on the brake. I thought I could stop before reaching the wagon, but my car touched the wagon.''

The jury, however, might well have found from the evidence that defendant saw, or by the exercise of ordinary care could and would have seen, plaintiff's wagon at the time he was alongside of and in the act of passing the street car, in ample time to have reduced the speed of his automobile, and thus could have avoided coming in contact with the wagon.

There is some discrepancy in the evidence respecting the degree of force with which the automobile came in contact with the wagon. Defendant's evidence was to the effect that the impact was so slight that neither the wagon nor the plaintiff was disturbed by it. The evidence offered by plaintiff tended to show that the automobile came against the wagon with considerable force. One witness testified that when the car struck the wagon it threw the wagon ahead, and the plaintiff having hold of the lines, was thrown back and the shafts were thrown ''up and around the top of the horse's neck,'' and that plaintiff appeared to be in pain; that ''she was kind of doubled forward, acting as if her back was hurt.'' Another witness testified that the impact pushed the horse and wagon ahead two or three feet, and that the little boy fell backwards and ''grabbed hold of his mother's clothes to keep from falling,'' and that plaintiff had the appearance of being in pain. Plaintiff testified that on the occasion in question she lost consciousness and—

''when I came to I realized that something had happened. * * * I received a pain that lasted from Saturday until Wednesday. * * * Then I was taken to the hospital.''

Dr. Howells, who was summoned to plaintiff's home soon after the accident, testified in part as follows:

''She was at home suffering from pain in her back and pelvis. It seemed to be a case of miscarriage. * * * I took her to the hospital, where she was operated on by Dr. Cannon.''

He also testified that ''a blow or shock'' might have caused the miscarriage. Dr. Cannon was called as a witness. We do not deem it necessary to here review his evidence in detail.

We think it sufficient to say that his evidence, when considered in connection with other facts in evidence, was ample to support a finding by the jury that the collision referred to was the proximate cause of the miscarriage.  We also think that the jury were amply justified in finding from the whole evidence that the defendant was negligent; that he could, by the exercise of ordinary care in the management of his automobile, have avoided coming in contact with plaintiff's wagon.  The court, therefore, did not err in refusing to direct a verdict for defendant.

On cross-examination plaintiff's husband related a part of a conversation he had with the defendant about the accident the day after it occurred.  On re-direct he was asked by plaintiff's counsel if the defendant, in that conversation, said "anything about any insurance company."  The question was objected to on the ground that it was incompetent and immaterial.  The objection was overruled, and the witness answered:  "Yes; insurance company paid for it—he was insured."  The ruling of the court admitting this evidence is assigned as error.  Assuming, but not holding or conceding, that the evidence, as an academic proposition, was inadmissible, we are of the opinion, and so hold, that it could not have influenced the jury in arriving at their verdict.  The amount of the verdict, we think, conclusively shows that the jury did not enhance the award for damages because of the fact that the insurance company might ultimately be compelled to save harmless the defendant by paying to him the amount of the judgment.  It must be conceded that $1,500 is a moderate sum as compensation for the injuries which the jury were justified in finding plaintiff suffered as a result of the accident, which injuries, they might well find from the evidence, have permanently impaired her health.

We find no reversible error in the record; hence the judgment is affirmed.  Respondent to recover costs.

STRAUP, C. J., and FRICK, J., concur.